STATE OF IOWA, appellee, v. GARY FIEDLER, appellant.

No. 52259.

(Reported in 152 N.W.2d 236)

July 11, 1967.

█ 

H. A. McQueen, of Sioux City, for appellant.

Richard C. Turner, Attorney General, Stephen Robinson, Assistant Attorney General, and James L. McDonald, Cherokee County Attorney, for appellee.

RAWLINGS, J.—By county attorney's information defendant was charged with the crime of manslaughter committed by driving and operating his motor vehicle in a reckless manner, causing the death of one David Ellsworth Preston.

Defendant entered a not guilty plea. Trial to jury resulted in conviction and sentence. He appeals. We affirm.

About 3 p.m., September 4, 1965, the accused and five other young men congregated in a garage in Remsen, and began what developed into a prolonged tragic drinking spree. While at the garage defendant consumed at least two cans of beer, and one or two swallows of straight whiskey.

About 4:30 this group and another party left for Cherokee in defendant's car. Driving away from the Remsen garage he "laid a rubber mark" for about 40 feet.

On the trip to Cherokee defendant had three or four more cans of beer, drove 90 miles an hour, and passed other vehicles, going fast on the curves.

In Cherokee Fiedler drank more beer. He and two others then went to a tavern. When they came out defendant was loud, wilder than before and vulgar.

On leaving Cherokee for Cleghorn, defendant again driving, laid rubber 30 or 40 feet from a dead stop, then resumed the 90 miles an hour speed until they had a flat tire. One change was made, and when a second flat developed he continued on into Cleghorn at about 50 miles an hour on the rim.

They arrived there about 7:30, went to a cafe, and remained there about 20 minutes. Fiedler was loud and vulgar, and stated he wanted to be in Merrill at 8 or 8:30. While in this cafe defendant stumbled and fell off a stool.

On leaving the restaurant Fiedler raced up and down main street at 40 to 50 miles an hour, and was drinking more beer when, about 8, they left town.

Traveling west out of Cleghorn he failed to obey a stop sign at the junction of highways 3 and 5, was again going about 90, and admittedly more than 70 miles an hour. When approximately one and three-quarters mile east of Marcus the defendant, on a straight level road with clear visibility, started to pass a same direction automobile, pulled to his left and struck an oncoming car.

This accident resulted in the death of David Ellsworth Preston, occupant in the opposite direction vehicle, and Johnny Oehlerts, a guest in the Fiedler vehicle.

Two of the young men in Fiedler's car, and several disinterested witnesses who saw or talked to defendant prior to the collision, stated he was either drinking, acting drunk, or intoxicated. One party called as a witness for the prosecution said he talked to Fiedler in Cleghorn and defendant there admitted he was drunk.

The correctness of some of this testimony is conceded by defendant, some disputed, and some he could not question because of lapse of memory.

I. The first error assigned is that the trial court erred in overruling objections to certain evidence on what defendant terms hypertechnical grounds. Initially it is contended all his objections were overruled, and every one asserted by the State was sustained.

We have examined the transcript and find this statement to be without foundation.

Under this first specification of error defendant then advances 15 brief points, each dealing with the challenged admission or exclusion of certain evidence.

In so doing he cites one isolated authority in support of only one of these brief points.

Dealing with a comparable situation in State v. Streit, 248 Iowa 260, 262, 80 N.W.2d 318, this court noted that where a defendant on appeal cites no authority in support of errors claimed we are under no compulsion to entertain the assignment.

There is no need to extend this opinion by setting forth all the questions, objections or answers to which defendant refers.

In large part the complaints are directed to competency of opinion evidence as to defendant's intoxication, the claimed right to show his normal behaviorism, propriety of some alleged leading questions, the sustaining of objections to cross-examination of a State's witness, and comment by the court in ruling upon an objection.

After verdict had been returned, defendant's counsel moved for a new trial, but no reference was there made to any of the matters above stated.

Under these circumstances the first assignment of error will be considered generally, and only as a matter of grace. See Code section 793.18; State v. Post, 255 Iowa 573, 578–580, 123 N.W.2d 11; State v. Stump, 254 Iowa 1181, 1185, 119 N.W.2d 210; and State v. Kneeskern, 203 Iowa 929, 947, 210 N.W. 465.

"A witness who has observed a person may express an opinion whether he is intoxicated without first stating the facts on which the opinion is based. [Authorities cited.] But such opinion must be based on observation. And the record must show the witness had a reasonable opportunity for observation to be competent. [Authorities cited.]" State v. Musack, 254 Iowa 104, 112, 116 N.W.2d 523.

The scope of cross-examination is within the sound discretion of the trial court. State v. Myers, 257 Iowa 857, 861, 862, 135 N.W.2d 73.

Also, permission to ask leading questions rests in the sound legal discretion of the court, a clear showing of abuse of that discretion with apparent material prejudice to the rights of the objecting party being required before we will interfere. State v. Long, 256 Iowa 1304, 1309, 1310, 130 N.W.2d 663, and Underhill's Criminal Evidence, Fifth Ed., section 493, pages 1203, 1204.

█ Defendant further claims a witness called by him should have been permitted to answer a question regarding his normal behavior in public.

There are two reasons why the ruling complained of cannot be held to constitute reversible error. First, as already disclosed, no authority is cited in support of the position taken.

In the second place no offer of proof was made and we are unable to now determine what the answer of defendant's witness would have been, if permitted. See Christianson v. Kramer, 257 Iowa 974, 978, 135 N.W.2d 644; State v. Ladehoff, 255 Iowa 659, 666, 667, 122 N.W.2d 829; and State v. Neubauer, 145 Iowa 337, 343, 344, 124 N.W. 312.

A reading of both the record and transcript fails to disclose such abuse of discretion by the trial court as to constitute prejudicial error in allowing or excluding the classes of evidence to which defendant alludes.

Finally, on this assignment, the county attorney, during trial, asked a witness if he had an opinion as to whether Gary Fiedler was under the influence of intoxicants at a given time. On objection by defense counsel to the effect the witness had already stated he was not a judge of anyone as to whether they were intoxicated, the trial court in overruling the objection stated, "He is not expected to be the judge. That is what the jury is for." No objection was interposed and no exception taken.

Under these circumstances we are not required to pass on the matter but again do so in fairness to defendant.

█ In this jurisdiction a court cannot comment on the facts. State v. Shearer, 206 Iowa 397, 404, 220 N.W. 13.

█ However remarks by a trial judge while ruling on objections as to admissibility of evidence cannot be held erroneous provided they are not unfair and prejudicial to the accused. State v. Ladehoff, supra, loc. cit. 255 Iowa 671; State v. Jensen, 245 Iowa 1363, 1368, 1369, 66 N.W.2d 480; State v. Dobbins, 152 Iowa 632, 641, 132 N.W. 805, 42 L. R. A., N. S., 735. See also 23 C. J. S., Criminal Law, sections 992, 993, pages 1018–1033; 88 C. J. S., Trial, sections 49, 50, pages 124–137; 53 Am. Jur., Trial, sections 78, 79, pages 76–79; Underhill's Criminal Evidence, Fifth Ed., section 548; and 94 A. L. R.2d 826.

██ We find no basis upon which to hold the court's comment, to which defendant now objects for the first time, was unfair or prejudicial.

██ II. In presenting his second assigned error defendant contends the trial court should have included in its instruction a definition of "misdemeanor" and "felony".

Although this point was raised on motion for a new trial we are again without benefit of a single citation of authority supporting his position and we find none.

The instructions given first defined manslaughter as the unintentional killing of a human being by another, without malice, in the doing of an unlawful act not amounting to a felony, or taking a life, without malice, in the doing of some unlawful act in an unlawful manner.

This is in keeping with our prior decisions under Code section 690.10. See State v. Kellison, 233 Iowa 1274, 11 N.W.2d 371, and 44 Iowa Law Review, 588.

By the next two instructions the jury was told operation of a motor vehicle on a public highway while in an intoxicated condition is a criminal offense. This was followed by an instruction to the effect, reckless operation of an automobile on a public highway is an unlawful act.

Under these circumstances we find no error by the court in failing to define felony and misdemeanor.

Such an instruction might have been given but was not necessary.

III. All but one of the remaining assignments of error are directed to instructions given by the trial court. However, the record discloses that prior to the giving of instructions to the jury defendant neither took exception nor did he request anymore explicit instructions be given.

██ This court said in State v. Baker, 246 Iowa 215, 231, 66 N.W.2d 303: "It is a well-settled rule of this court that where an instruction is correct as given, though not as explicit as a party may desire, error cannot be based thereon, in the absence of a request for additional instruction." And see State v. Wessling, 260 Iowa 1244, 150 N.W.2d 301, 308–310.

Furthermore defendant's motion for new trial makes no reference to instructions 5, 12, 13 and 15, which he now challenges for the first time.

In State v. Miller, 254 Iowa 545, 557, 117 N.W.2d 447, defendant on appeal complained for the first time of an alleged omission in an instruction relative to corroboration of an admission by the accused. In that instance no claim of error based on the asserted omission was included in the motion for new trial and we said: "In this state of the record, we cannot review the assignment."

The foregoing is also supported by Code section 780.35; rule 196, R. C. P.; State v. Ford, 259 Iowa 744, 145 N.W.2d 638, 642; State v. Post, 255 Iowa 573, 584, 123 N.W.2d 11; State v. Kelley, 253 Iowa 1314, 1318, 115 N.W.2d 184; State v. Jones, 253 Iowa 829, 834, 113 N.W.2d 303; State v. Pullen, 252 Iowa 1324, 1327, 1328, 110 N.W.2d 328; and State v. Kramer, 252 Iowa 916, 918, 919, 109 N.W.2d 18.

Again as a matter of grace all the instructions have been reviewed. Although not in every instance a classic example of clarity, they fairly presented the case to the jury. More explicit instructions, if desired, should have been requested.

██ ██ IV. The jury retired at 11:10 a.m. March 10, 1966. That evening about 10:28 p.m. the bailiff reported to the court he had been advised by the foreman the jury appeared to be deadlocked.

Thereupon the court, with defendant, his counsel, and the county attorney present, submitted to the jury this written inquiry: "Do you now report to the Court that the jury is hopelessly deadlocked and that further deliberations either now or in the morning would not produce a verdict?"

Defendant's objection to this procedure was overruled.

At 10:45 p.m. the questionnaire prepared by the court was delivered to the jury.

About five minutes later the bailiff reported the jury had expressed a desire to make another try.

At 11:15 p.m. the jury, through the bailiff, asked to hear a portion of the closing argument by defendant's counsel.

The court promptly submitted a written communication to the jury denying the request made.

Defendant's counsel then moved the court declare the jury "hopelessly deadlocked." This motion was overruled.

The next day, at 12:25 a.m., the jury returned into court with a verdict finding defendant guilty.

On motion for new trial, which was overruled, defendant claimed these pre-verdict proceedings served to deny him a fair trial.

It is now contended the foregoing communications to the jury were additional instructions which could only be given in open court. We do not agree.

In support of his claim a new trial should be accorded him by reason of this asserted error, defendant leans heavily on State v. Register, 253 Iowa 495, 112 N.W.2d 648.

There a jury foreman, escorted to the judge's chambers, with neither defendant nor his attorney present, requested an instruction regarding the effect of finding defendant guilty of larceny and the value of the property was $20. The court then read to the foreman a portion of Code section 709.2. We held this was an additional instruction.

In the cited case, loc. cit. 253 Iowa 503, we quote from Burton v. Neill, 140 Iowa 141, 145, 118 N.W. 302, 17 Ann. Cas. 532, as follows: "* * * it is quite uniformly held that the instructions which must be in writing under statutory requirements are only expressions of the principles of the law applicable to the case, or some branch or phase of the case, which the jury are bound to apply in order to render a verdict establishing the rights of the parties in accordance with the facts proven. * * * 'That general directions to the jurors as to their duty, not having any bearing upon the evidence which they are to consider and the law applicable thereto, are not instructions such as are required to be in writing under statutory provisions is illustrated by many cases.' "

Stated otherwise not every communication between judge and jury subsequent to the jury's retirement to deliberate on a verdict is an instruction.

A case factually comparable to State v. Register, supra,

though not cited by defendant, is Daniels v. Bloomquist, 258 Iowa 301, 306, 138 N.W.2d 868, 871, 872. There a foreman, called from the jury room, was told the judge wanted to see him. Five to seven minutes later the foreman returned and told the other jurors a verdict must be reached. In reversing we held the conduct disclosed was so tainted with suspicion as to constitute prejudicial misconduct.

We conclude neither State v. Register nor Daniels v. Bloomquist, both supra, is here factually in point or helpful to defendant.

In the case at hand the court, on one occasion, merely inquired as to whether the jury was unable to agree, and at another time gave an unequivocal answer to a question submitted. These communications neither attained the status of an instruction, nor do we find, under the circumstances here disclosed, prejudice resulted to defendant from the challenged conduct of the trial court. See McNider v. Fisher, 197 Iowa 523, 525–528, 197 N.W. 647; Brossard v. Chicago, M. & St. P. R. Co., 167 Iowa 703, 722, 149 N.W. 915; and 41 A. L. R.2d 311.

Furthermore there was nothing in the inquiry submitted by the court which could be construed as urging a verdict, and it was not in any sense coercive. See in this regard State v. Myers, 258 Iowa 940, 952, 140 N.W.2d 891, 898.

V. We find no reversible error and conclude defendant was accorded a fair trial.

Affirmed.

All Justices concur.